**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| KETTNER INVESTMENTS, LLC,[1] | : : | Case No. 20-12366 (KBO) |
| Debtor. | : : | **Re:  D.I. 248, 256 and 270** |
| | : : | **Hearing Date:  February 15, 2022 at 12:00 PM ET**<br>**Obj. Deadline:  February 4, 2022 at 4:00 PM ET** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO**
**CONFIRMATION OF THE DEBTOR'S FIRST AMENDED PLAN**

In support of his objection to confirmation of the first amended chapter 11 plan (the "Plan")

of reorganization of Kettner Investments, LLC (the "Debtor" or "Kettner") under chapter 11 of the

Bankruptcy Code [D.I. 248], Andrew R. Vara, United States Trustee for Region 3 ("U.S. Trustee"),

through his counsel, avers:

**PRELIMINARY STATEMENT**

1.    The Debtor's Plan should not be confirmed because it includes four impermissible

provisions.  First, the Plan imposes non-consensual third-party releases on the Debtor's creditors

and interest holders and, through a related-parties clause, an additional nineteen broad and ill-

defined categories of Related Parties who have some connection to the Debtor's creditors or

interest holders.  The Related Parties include, by way of example, all current and former employees

---

[1]    The Debtor in this chapter 11 case, together with the last four digits of each Debtor's federal tax identification number, is as follows: Kettner Investments, LLC, successor-by-merger to Stone Ash, LLC (Delaware), fka General Hemp LLC, and fka Greater Hemp LLC (2258). The mailing address for the Debtor, solely for the purpose of notices and communications, is: 9625 Mission Gorge Road, No. B-2331, Santee, California 92071.

of the Debtor's creditors and interest holders.  It does not appear that the Debtor obtained the affirmative consent of any of the parties who will be stripped of their claims against non-debtors. Nor were any such parties even presented with an ability to opt-out of giving such releases.  In addition, the vast majority of the Related Parties will not even have received notice that they will have releases forced upon them, because they are not themselves creditors or interest holders of the Debtor.  The inclusion of such non-consensual third-party releases prevents the Plan from being confirmed unless the breadth and scope of the "Related Parties" clause are substantially narrowed.

2.      Second, the Plan's exculpation provision impermissibly extends to post-Effective Date conduct and covers the Reorganized Debtor, who will not exist until after the Effective Date, as well as the Reorganized Debtor's directors, managers and officers.

3.      Third, the Plan's "Injunction Related to Releases" (i) enjoins a larger set of claims than those released under the Plan and (ii) impermissibly enjoins the assertion of the defense of recoupment.

4.      Fourth, the Plan impermissibly seeks to treat Plan provisions, and the Plan itself, as a "settlement" subject to the standards of Federal Rule of Bankruptcy Procedure 9019.

5.      For these reasons, set forth in more detail below, the Plan should not be confirmed.

## **JURISDICTION**

6.      This Court has jurisdiction over the above-captioned case pursuant to 28 U.S.C. § 1334.  This Court is authorized to hear and determine whether the Plan should be confirmed pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued by the

United States District Court for the District of Delaware dated February 29, 2012.  Venue of the case is proper in this District pursuant to 28 U.S.C. § 1408(1).

7.      Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").  Specifically, the U.S. Trustee is charged with "monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements."  28 U.S.C. § 586(a)(3)(B).

8.      The U.S. Trustee has standing to be heard with respect to confirmation of the Plan pursuant to 11 U.S.C. § 307.

## ARGUMENT

**A.    Plan's Third-Party Releases are Non-Consensual and Not Warranted Under Third Circuit Law.**

9.      The Plan provides for non-consensual third-party releases.

10.     In Plan section X(C), the Debtor proposes the release of claims held by its creditors, interest holders and their Related Parties against numerous non-debtor parties (the "Third-Party Release[s]"):

Effective as of the Effective Date, for good and valuable consideration, the

3

adequacy of which is hereby confirmed, the **Releasing Parties** shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void and extinguish the **Released Parties** from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, for any act or omission that (a) took place prior to the Petition Date relating to and/or in connection with the Debtor or (b) in connection with, relating to, or arising out of (i) the Chapter 11 Case, (ii) the negotiation and Filing of this Combined Disclosure Statement and Plan, (iii) the Filing of the Chapter 11 Case, (iv) the prosecution or settlement of Claims and Causes of Action, (v) the performance, assumption, assignment, termination, or rejection of Executory Contracts, (vi) the pursuit of confirmation of this Combined Disclosure Statement and Plan, (vii) the consummation of this Combined Disclosure Statement and Plan, (viii) the administration of this Combined Disclosure Statement and Plan or (ix) the distribution of property to be Distributed under this Combined Disclosure Statement and Plan or the terms of the Probate Settlement Agreement. (emphasis added)

11.     The term "**Releasing Parties**" is defined as, "the following Entities, each in their respective capacities as such, (a) the Debtor; (b) each Holder of a Claim; (c) each Holder of an Equity Interest; and (d) the **Related Parties of the foregoing**." Plan § II(A)(87) (emphasis added).

12.     The term "**Related Parties**" is defined as:

with respect to any Person or Entity, such Person's or Entity's current and former direct or indirect subsidiaries and affiliates and each of their[2] respective current and former stockholders, members, limited partners, general partners, equity holders, directors, managers, officers, employees, agents, designees, attorneys, financial advisors, investment bankers, accountants, and other professionals or representatives.

Plan § II(A)(85).

---

[2]     It is unclear whether "their" is a reference to just "any Person or Entity," or also includes "such Person's or Entity's current and former direct or indirect subsidiaries and affiliates." If it is the latter, then the term Related Parties would include not just the current and former employees (and agents, representatives, professionals, etc.) of each of the Debtor's creditors and interest holders, but also those of the affiliates of each of the Debtor's creditors and interest holders.

4

13.    The term "**Released Parties**" is defined as "the following Entities, each in their capacity as such, (a) the Debtor and Reorganized Debtor; (b) TL-66; (c) MJNA; (d) C&B; (e) Cross & Company; and (f) the Related Parties of the foregoing, for the avoidance of doubt, the Premium Parties and the Stone Ash Defendants are not Released Parties."  Plan § II(A)(86).[3]

14.    As can be seen from the Third-Party Release provision, and the definition of "Releasing Parties," the Plan provides that ***all*** holders of claims and all holders of equity interests, and their Related Parties will be giving releases to numerous non-debtors. There does not appear to have been any attempt by the Debtor to obtain affirmative consent to such releases from any such holders or their Related Parties.  None of the holders of claims and equity interests have the ability to vote on the Plan because they are all classified as "unimpaired," and deemed to accept, the Plan. *See* Plan at 21.

15.    Even if parties' rights against the Debtor are unimpaired, the scope of the claims

---

[3]    "TL-66" is the Debtor's primary secured creditor and is both owned and controlled by the Arabia family; James Arabia is the Debtor's Chief Restructuring Representative.  "MJNA" is Medical Marijuana, Inc., one of the Debtor's portfolio companies which became the Debtor's majority owner during this case. Columbia & Beech is a corporation in which Michael Llamas, the Debtor's former principal, asserted an 87.5% interest as of the Petition Date, and which the Debtor scheduled as having a disputed unsecured claim in excess of $8 million.  Cross & Company is an entity controlled by James Arabia which paid Debtor's counsel's retainer in this case.  The "Premium Parties" are parties to California state court litigation involving a dispute over $5.13 million investment in land alleged to be owned by Pricilla Vilchis that the Debtor contends originated with Stone Ash Delaware (the Debtor's predecessor), but that the Premium Parties contend originated with Michael Llamas.  The "Stone Ash Defendants" are Stone Ash, LLC; Jeff Llamas; Shannon Llamas; New Horizons Marketing, LLC; Nutralife Wellness, LLC; 324 Blends, LLC,; Valentine Vixen, LLC,; Long Term Yacht Holdings, LLC;  HML Holdings, LLC; and Morris James, LLP.  Plan § II(A)(94).  The Debtor acquired the Llamas' estate's interest in its claims against the Stone Ash Defendants, which are presently pending in California state court.  In the litigation, Stone Ash, LLC (California) is seeking adjudication of ownership of some $9.8 million in stock sale proceeds belonging to Debtor which Stone Ash California received and held as nominee for Debtor.

being released extend beyond those.  The Plan releases "any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, for any act or omission that (a) took place prior to the Petition Date *relating to and/or in connection with the Debtor …*," regardless of whether such claim is one on which party is receiving *any* distribution under the Plan. Plan § X(C) (emphasis added).

16.    The "Related Parties" are numerous, including the current and former employees of each of the Debtor's creditors and interest holders, as well as the Debtor's own current and former employees,[4] and possibly the current and former employees of all Debtor affiliates.  Thus, there will be no affirmative consent to any non-debtor releases given by anyone on whom such releases will be imposed.  As such, the Third-Party Releases are non-consensual.

17.    Third-party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent.  *See In re Emerge Energy Services LP,* 19-11563 (KBO), 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019); *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011) (Walrath, J.).  No voting occurred in connection with the Plan and, by extension, there is no evidence that the Debtor's creditors have affirmatively consented to the Third-Party Releases.  Similarly, the "Related Parties" are likely not receiving notice of the Debtor's intention to impair their rights against third parties under the Plan and have not agreed to

---

[4]    This is because the Debtor is included in the definition of "Releasing Parties," even though such definition identifies the parties who are providing releases in section X.C of the Plan, which is titled "Third Party Releases." The Debtor is providing a separate set of releases under the section X.B of the Plan, which is titled "Releases by Debtor."  Having a duplicative set of releases given by the Debtor is confusing, unnecessary, and could result in conflicting provisions.  The Debtor therefore should not be included in the definition of "Releasing Parties."

the proposed Third-Party Releases.  *See Joel Patterson v. Mahwah Bergen Retail Group, Inc.*, No. 3:21CV167 (DJN), 2022 WL 135398 (E.D. Va. Jan. 13, 2022) (failure to opt out of a chapter 11 plan's release provisions does not constitute consent to same); *Emerge*, 2019 WL 7634308 at * 18 ("a waiver cannot be discerned through a party's silence or inaction unless specific circumstances are present;" rejecting argument that failure to opt-out of a chapter 11 plan's release provisions constitutes consent to the release); *Wash. Mut.*, 442 B.R. at 355 ("[A]ny third party release is effective only with respect to those who *affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party releases" (emphasis added)).

18.     Forcing the "Related Parties" of all holders of claims or interests to release non-debtors raises issues beyond consent.  Such Related Parties (i) are not receiving anything under the Plan, (ii) have no ability to consent or to withhold consent to giving releases, and (iii) likely will not have received any notice of the filing of the Debtor's bankruptcy case and/or that releases were to be imposed on them.  This is because the majority of the Related Parties are not themselves creditors or interest holders of the Debtor, and therefore would not have been served with the confirmation hearing notice or any other document that would notify them that the Plan will strip them of their rights to pursue their direct claims against a large number of non-debtor parties.

19.     In *Folger Adam Security, Inc. v. DeMatteis/MacGregor*, 209 F.3d 252 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit stated: "Due process requires 'notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 265 (citations omitted).  The Debtor did not provide notice to the Related Parties that was "reasonably calculated, under all the circumstances, to apprize [them] of the pendency of the action and afford

them an opportunity to present their objections" to being compelled to release the Released Parties. *Id.*  Thus, if persons are not even receiving notice, it is inconceivable that they are providing consent.[5]

20.    The Plan's non-consensual Third-Party Release does not meet the requirements for approval of the same under applicable law.  In *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third- party release is permissible.  The Court acknowledged that several Circuits do not allow such non-consensual releases under any circumstances.  *See id.* at 212.  Other Circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases," such as mass tort cases.  *See id.* at 212 (citing *Securities and Exchange Commission v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.*), 843 F.2d 636, 640, 649 (2d Cir. 1988)); *see also In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 141 (2d Cir. 2005) (third-party release may be granted "only in rare cases").

21.    The Third Circuit in *Continental Airlines* ultimately determined that the proposed releases in that case, which enjoined shareholder lawsuits against debtors' directors and officers,

---

[5]    In vacating the Bankruptcy Court's order confirming the plan in *Joel Patterson v. Mahwah Bergen Retail Group, Inc.*, No. 3:21CV167 (DJN), 2022 WL 135398 (E.D. Va. Jan. 13, 2022), the District Court for the Eastern District of Virginia noted, "[t]he Bankruptcy Court did not order that any notice or opt-out forms be sent to the Releasing Parties, including the current and former employees, consultants, accountants or attorneys of Debtors, their affiliates, lenders, creditors or interest holders." *Id.* at *7.

did "not pass muster under even the most flexible test for the validity of non-debtor releases." *Continental*, 203 F.3d at 214. Therefore, the Court determined that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id.* at 214 n. 11 (emphasis added). However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at 214.

22.    The Third Circuit Court of Appeals recently referenced *Continental* in *In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings*, 19-1152, 2020 WL 2621797 (U.S. May 26, 2020), as one of the precedents, along with *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011), regarding nonconsensual third-party releases. The Third Circuit indicated that these decisions "set forth *exacting standards* that must be satisfied if such releases and injunctions are to be permitted." 945 F.3d at 139 (emphasis added).[6]

23.    In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the

---

[6]    Although not directly addressed by the Third Circuit in *Continental*, *Millennium Lab,* or *Global Industrial Technologies*, the issue of whether the bankruptcy court has statutory authority to confirm a plan that includes non-consensual releases between non-debtors was recently addressed by the United States District Court for the Southern District of New York in *In re Purdue Pharma, L.P.*, No. 21 CV 7532 (CM), 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021. That court held that no such statutory authority existed. 2021 WL 5979108 at * 69-70.

Court held that a clause in the plan which released claims of any creditors or equity holders against the senior lenders for any act or omission in connection with the bankruptcy cases and reorganization process required factual showings under *Continental* – that the releases were necessary for the reorganization and were given in exchange for fair consideration. *Id.* at 607. The Court elaborated that "necessity" under *Continental* requires a showing: (a) that the success of the debtors' reorganization bears a relationship to the release of the non-consensual non-debtor parties and (b) that the non-debtor parties being released from liability have provided "a critical financial contribution to the debtors' plan" in exchange for the receipt of the release. *Id.* at 607. A financial contribution is considered "critical" if without the contribution, the debtors' plan would be infeasible. *Id.* Fairness of a release is determined by examining whether non-consenting non-debtors are receiving reasonable consideration in exchange for the release. *Id.* at 608. In most instances of a release provision in a plan, this will entail examining the proposed dividend that non-consenting creditors will receive under a plan with the releases compared to what they would receive under a plan without the releases. *See id.*; *see also In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del. 2010) (applying same factors).

24.     The *Genesis* Court found that the senior lenders had made a financial contribution to the plan, which allowed the debtors to make the 7.34% distribution to the unsecured creditors, who otherwise would be "out of the money." *Id.* at 608. Ultimately, though, the Court found that such contribution was not enough, because "even if the threshold *Continental* criteria of fairness and necessity for approval of non-consensual third-party releases were marginally satisfied by these facts … [the] financial restructuring plan under consideration here would not present the *extraordinary circumstances* required to meet even the most flexible test for third party releases."

*Id.* (emphasis added).

25.     In the current case, there is nothing in the record to indicate the presence of "extraordinary circumstances," or that that the high threshold necessary for approval of non-consensual third-party releases has been met with respect to each of the non-debtor parties that would be the recipients of these non-consensual releases.  A number of the Released Parties (if not all of them, except for the Debtor) made no "critical financial contribution" to the Plan, yet all of them are the recipients of non-consensual third-party releases.  Further, the Released Parties who are party to the Probate Settlement Agreement previously approved by this Court did not condition their entry into the settlement upon the receipt of such releases.  There simply is no necessity for these third-party releases, and no consideration being paid by the Released Parties in exchange for the releases.

26.     The Third Circuit Court of Appeals and this Court have already determined that the Debtor's directors and officers are not entitled to non-consensual third-party releases.  *See PWS Holding,*  228 F.3d  at 245-46  ("§ 524(e) makes clear that a discharge in bankruptcy does not extinguish claims by third parties against guarantors or directors and officers of the debtor for the debt discharged in bankruptcy."); *Continental,*  203 F.3d at 215 ("[W]e have found no evidence that the non-debtor D & Os provided a critical financial contribution to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability"); *Washington Mutual*, 442 B.R. at 354 ("[T]here is no basis for granting third party releases of the Debtors' officers and directors, even if it is limited to their post-petition activity. The only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan. Those activities are nothing more than what is required of directors and officers of debtors in possession

(for which they have received compensation and will be exculpated); they are insufficient to warrant such broad releases of any claims third parties may have against them. . . ."); see also *Genesis*, 266 B.R. at 606–07 (in rejecting a *debtor's* release of its directors, officers and employees, the Court held that, "the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the reorganization.").

27.     The Debtor has the burden of establishing whether the *Continental/Genesis* factors have been met for each of the non-debtor released parties who are the beneficiaries of the non-consensual third-party releases, including whether the third-party releases are "both necessary and given in exchange for *fair consideration*." *Continental*, 203 F.3d at 214, n. 11 (emphasis added). The Debtor here should not be allowed the unfettered discretion to force to release non-debtors from liability, because a permanent injunction limiting the liability of non-debtor parties is a rarity that should not be considered absent a showing of "extraordinary circumstances." *See Continental*, 203 F.3d at 212; *Tribune*, 464 B.R. at 178 (interpreting *Continental* to allow non-consensual releases only in "extraordinary cases."); *Genesis*, 266 B.R. at 608.

28.     There are two other aspects of the Third-Party Release that render the Plan unconfirmable.  The first is that, unlike the Debtor Release set forth in section X.B of the Plan, the Third-Party Release makes no exception for actual fraud, willful misconduct or gross negligence. This is a problem because the Debtor is included in the definition of "Released Party," and therefore will be receiving releases under the Third-Party Release.  Yet the Debtor is barred from being discharged for claims of fraud and willful misconduct under the Bankruptcy Code.  *See* 11 U.S.C. § 523(a)(2, 4, 6).  Nor should non-debtor parties be able to receive a release from claims

for actual fraud and willful misconduct when the Debtor is not entitled to a discharge for such claims.  *See In re Purdue Pharma, L.P.*, No. 21-cv-7532, 2021 WL 5979108 at *62 (S.D.N.Y. Dec. 16, 2021).

29.    The final element of the Third-Party Release to which the U.S. Trustee objects is that it includes prospective releases.  The Third-Party Release provision eliminates liability for events that will occur in the future if the Plan becomes effective, such as the distribution of property under the Plan.  *See* Plan § X(C).

30.    For the reasons set forth above, the Plan cannot be confirmed unless the Third-Party Release provision is eliminated.

**B.    The Exculpation Provision Is Impermissibly Broad.**

31.    Plan section X(A) sets forth the following Exculpation provision:

The Exculpated Parties shall not have or incur, and are hereby ***released from***, any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability to one another or to any Holder of any Claim or Equity Interest, or any other party-in-interest, or any of their respective Related Parties, for any act or omission ***originating*** or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of (i) the Chapter 11 Case, (ii) the negotiation and Filing of this Combined Disclosure Statement and Plan, (iii) the Filing of the Chapter 11 Case, (iv) the prosecution or settlement of Claims and Causes of Action, (v) the performance, assumption, assignment, termination, or rejection of Executory Contracts, (vi) the pursuit of confirmation of this Combined Disclosure Statement and Plan, (vii) the consummation of this Combined Disclosure Statement and Plan, (viii) the administration of this Combined Disclosure Statement and Plan or (ix) the distribution of property to be Distributed under this Combined Disclosure Statement and Plan, except for (a) any Claims and Causes of Action for actual fraud, willful misconduct or gross negligence as determined by Final Order of a court of competent jurisdiction and (b) any obligations that they have under or in connection with this Combined Disclosure Statement and Plan or the transactions contemplated in this Combined Disclosure Statement and Plan. . . . (emphasis

13

added).

32.     The term "Exculpated Parties" is defined as "the following Entities, each in their respective capacities as such, (a) the Debtor; (b) the Reorganized Debtor; (c) the Professionals;[7] and (d) all directors, managers and officers of the Debtor or Reorganized Debtor."   Plan § II(A)(47).

33.     Plan exculpations may cover only conduct occurring between the petition date and the Plan's effective date.  *See In re Washington Mutual, Inc.,* 442 B.R. 314, 350 (Bankr. D. Del. 2011) (Walrath, J.) (exculpations cover "actions *in* the bankruptcy case") (emphasis added), citing *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000)).  The exculpation provision does not comply with this limitation in two ways.  First, subsection (d) of the definition of Exculpated Parties is not limited, as it should be, to the directors, managers and officers of the Debtor who served during any part of the chapter 11 case.  Rather, it also includes the directors, managers and officers of the Reorganized Debtor, who will not come into existence until after the Plan's effective date.  Second, the text of the Exculpation provision covers conduct "*originating or* occurring" between the petition date and the Plan's effective date.   By using the word "originating," the Debtor is attempting to side-step the temporal restriction set by this Court and extend the proposed exculpation into to the post-Effective Date period.

34.     In addition, the term "release" in the Exculpation provision should be eliminated,

---

[7]    "Professional" means any professional person employed in the Chapter 11 Case under section 327, 328 or 1103 of the Bankruptcy Code by an Order of the Bankruptcy Court and to be compensated for services rendered under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.  Plan § II(A)(78).

as use of the term conflates two distinct concepts: exculpation is an acknowledgment of the standard of care owed by estate fiduciaries, while a non-consensual release of claims held by third parties (as this would be) is only permissible in limited, extraordinary circumstances under Third Circuit law. *Compare PWS Holding Corp.*, 228 F.3d at 245 ("However, we believe that [the exculpation provision], which is apparently a commonplace provision in Chapter 11 plans, does not affect the liability of these parties, but rather states the standard of liability under the Code ….") with *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) (proposed release "[did] not pass muster under even the most flexible tests for the validity of non-debtor releases," as "the hallmarks of permissible non-consensual releases—fairness, necessity to the reorganization, and specific factual findings to support these conclusions—[were] all absent.").

### C.    The Plan's Injunction Provisions Are Overbroad.

35.    Plan section X(D), titled "Injunction Related to Releases," provides:

Except as expressly otherwise provided in the Combined Disclosure Statement and Plan or in an Order of the Bankruptcy Court, effective as of the Effective Date, all Persons that hold, have held or may hold a claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability of any nature whatsoever, *that is released* pursuant to this Combined Disclosure Statement and Plan, shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, ***on account of or based on the subject matter of such released claims, Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies or liabilities***, (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum, (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order, (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien, (iv) ***setting off (except to the extent such setoff was exercised prior to the Petition Date)***, seeking reimbursement or contributions from, or subrogation against, or otherwise ***recouping in any manner***, directly or indirectly, any amount against any liability

15

or obligation owed to any Person released under this Combined Disclosure Statement and Plan, and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Combined Disclosure Statement and Plan or the Confirmation Order or the terms of the Probate Settlement Agreement. (emphasis added)

36.    The claims being released pursuant to the Plan (beginning on the third line) should be a defined term to clarify the scope of the provision; presently, beginning on the seventh line of section X(D), the term "released" only modifies the word "claims" and, accordingly, enjoins matters which are not being released in the Plan.  The provision should be revised as follows; added/substituted language appears in italics:

> Except as expressly otherwise provided in the Combined Disclosure Statement and Plan or in an Order of the Bankruptcy Court, effective as of the Effective Date, all Persons that hold, have held or may hold a claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability of any nature whatsoever that is released pursuant to this Combined Disclosure Statement and Plan *(the "Released Claims")*, shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such *Released Claims*: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) ....

37.    In addition, both the "Injunction Related to Releases" and the "Injunction to Protect Estate Assets" set forth in Plan section X(E) are overbroad because they enjoin certain setoffs that are permissible under Third Circuit precedent, namely setoff claims that were exercised during the Debtor's bankruptcy case, and also enjoin the assertion of the defense of recoupment.  Under Third Circuit law, no Plan injunction should prevent a party from asserting a setoff that was exercised prior to plan confirmation, or from asserting the defense of recoupment.  *See United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 541 (3d Cir. 1998) (holding that

"the right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed"); *Folger Adam Security, Inc. v. Dematteis/Macgregor, JV*, 209 F.3d 252, 260-61 (3d Cir. 2000) (preserving the defenses of recoupment and pre-petition setoffs in connection with section 363 sales).

> **D.    The Plan Cannot be Confirmed Because it is Not a Settlement Subject to Approval Under Bankruptcy Rule 9019.**

38.    Section IX.C.1 of the Plan, entitled, "General Settlement of Claims," states as follows:

> Upon the Effective Date, and without modifying the confirmation requirements under Section 1129 of the Bankruptcy Code, the provisions of this Combined Disclosure Statement and *Plan shall constitute a good faith compromise and settlement of all Claims, interests and controversies resolved under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019*, in consideration for the classification, *distributions*, releases and other benefits provided under the Combined Disclosure Statement and Plan. Distributions made under the Combined Disclosure Statement and Plan to holders of Allowed Claims in any Class are intended to be final. (emphasis added)

39.    The Plan cannot be confirmed because it purports to be a "settlement" with creditors and interest holders who have no formal agreements with the Debtor.  Calling the Plan a "settlement" does not remedy the failure of the Third-Party Releases to satisfy the appropriate legal standards, nor does the "settlement" label supplant other legal standards governing approval of its contents.  To the extent there were other settlements in the case, those settlements were the subject of separate motions which were specifically approved as to the parties thereto.

40.    Code section 1123(b)(3)(A) allows a plan proponent to "provide for [] the settlement or adjustment of any claim or interest *belonging to the debtor or to the estate*." 11 U.S.C. § 1123(b)(3)(A) (emphasis added).  Thus, section 1123(b)(3) only allows a debtor to settle

claims it has against others; it does not allow a debtor to settle claims other parties may have against it.  *See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 409, 496 (B.A.P. 9th Cir. 2003) ("The only reference in [section 1123(b)] to adjustments of claims is the authorization for a plan to provide for 'the settlement or adjustment of any claim or interest *belonging* to the debtor or to the estate.  It is significant that there is no parallel authorization regarding claims *against* the estate.") (emphasis in original) (quoting section 1123(b)(3)(A)) (internal citation omitted).  The resolution of claims against the Debtor is governed by sections 1129 and 1141.

41.     In addition, while a plan may incorporate one or more negotiated settlements, a plan is not itself a settlement.  A "settlement" is "an agreement ending a dispute or lawsuit."  Black's Law Dictionary (10th ed. 2014).  An "agreement" is "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons."  Black's Law Dictionary (10th ed. 2014).

42.     Approval of settlements is governed by Federal Rule of Bankruptcy Procedure 9019, which provides that, "[o]n motion by the trustee [or chapter 11 debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  But, because a "settlement" requires an agreement between the settling parties, Rule 9019 governs only parties that have entered into an express settlement agreement; it is not a blanket provision allowing general "settlements" to be unilaterally imposed upon broad swaths of claimants that have no formal agreement with any party to "settle" their claims.

43.     The decision of whether to approve a settlement under Rule 9019 is left to the sound

discretion of the bankruptcy court, which "must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'" *Wash. Mut., Inc.*, 442 B.R. at 338 (quoting *In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997)).  In contrast, plans are subject to the many requirements of Code sections 1123 and 1129.

44.     Here, section IX(C)(1) of the Plan purports to treat the distributive provisions of the Plan, as well as the Plan itself, as if they were a Rule 9019 "settlement."  Because section IX (C)(1) is not limited to the settlement of claims belonging to the Debtor or its estate, it proposes a settlement that cannot be approved under section 1123(b)(3)(A).  Simply put, the Debtor cannot sidestep the law applicable to the Third-Party Releases by arguing that the releases are part of a settlement.

**[Continued on next page – space intentionally left blank]**

## CONCLUSION

WHEREFORE the U.S. Trustee requests that this Court enter an order denying confirmation of the Plan or granting other relief consistent with this objection.

Dated: February 4, 2022
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 and 9**

By: */s/ Joseph J. McMahon, Jr.*
Joseph J. McMahon, Jr.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
joseph.mcmahon@usdoj.gov